UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROSA TEIXEIRA,**<br><br>　　Plaintiff,<br><br>　　v.<br><br>**WALMART STORES, INC., JOHN DOES and ABC CORPS. 1-10,**<br><br>　　Defendants. | Civ. No. 18-13103 (KM) (ESK)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Rosa Teixeira slipped and fell at a Walmart store. She sued Walmart for negligence. Walmart now moves for summary judgment. (DE 19.)[1] For the following reasons, the motion is **GRANTED**.

**I.　BACKGROUND**

　　On the evening of October 24, 2016, Rosa Teixeira, accompanied by her two children, visited a Walmart store in Union, New Jersey. (Teixeira Dep. at 48–49.) As she turned the corner into the automotive aisle, Teixeira slipped on a puddle of clear liquid, roughly a foot in diameter, and landed on her left knee and hip. (*Id.* at 51–53.) Teixeira testified that the liquid was not water, but something "thicker than water." (*Id.* at 54.) It is implied that the liquid was some type of automotive fluid, but in the trauma of her fall, Teixeira was not able to determine the origin of the liquid. (*Id.* at 54–55; Opp. at 6.) In her deposition, Teixeira stated that she did not see any footprints or shopping-cart-

---

[1]　Certain citations to the record are abbreviated as follows:

　　DE = docket entry

　　Compl. = Complaint (DE 1-1)

　　Teixeira Dep. = Deposition of Rosa Teixeira (DE 19-4)

　　Valencia Dep. = Deposition of John Valencia (DE 19-5)

　　Opp. = Teixeira's Brief in Opposition to Walmart's Motion (DE 20)

wheel marks around the liquid, or any other indication that the liquid had been disturbed before she slipped on it. (Teixeira Dep. at 54.)

After Teixeira's fall, a Walmart employee came to her aid, brought her a chair, and called an ambulance. (*Id.* at 56–57.) Before departing in an ambulance, Teixeira filled out an incident report. (Id. at 57–59.) No one else present in the store that day was deposed, and there is no video footage of the incident. (Valencia Dep. at 39–40.)

Walmart's premises inspection protocols were described by John Valencia, loss prevention manager at the Union, New Jersey Walmart. (*Id.* at 21.) In his deposition, Valencia stated that upon arriving at the store, he and his team would walk around the store, visually inspecting every aisle for spills and other safety concerns (*Id.* at 23–25.) Another similar inspection would be undertaken at 2:00 P.M. and at 10:00 P.M. (*Id.* at 28, 48.) In addition, both "support managers" and "loss prevention associates" continuously patrolled the store during their shifts, looking for both shoplifters and safety hazards. (*Id.* at 29–31, 48.) Employees were trained that, if they came across a spill or other safety hazard during their duties, they should guard the spill until it could be cleaned up. (*Id.* at 19, 51.)

As a result of her fall, Teixeira suffered a great deal of pain and eventually underwent a knee replacement. (Teixeira Dep. at 41.) In July 2018, she sued Walmart for negligence in New Jersey Superior Court (Compl.). Walmart removed the case to this Court (DE 1.) Fact discovery having been completed and mediation having failed, Walmart moves for summary judgment. (DE 19; DE 26.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. A court must construe all facts and inferences in the light most favorable to the nonmoving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party still bears the burden of "establish[ing] the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Finally, there must be more than a "scintilla of evidence" creating the controversy; rather "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely).

### III. DISCUSSION

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (citation omitted). Ordinarily, the plaintiff bears the burden of proving each of these elements. *Brunson v. Affinity Fed. Cred. Union,* 199 N.J. 381, 400 (N.J. 2009). "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003). Accordingly, "an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.* That burden, however,

changes when the "mode-of-operation rule" applies. *Prioleau v. Ky. Fried Chicken, Inc.*, 122 A.3d 328, 335 (N.J. 2015).

I first discuss the mode-of-operation rule, but find that it does not apply here. (Section III.A.) I therefore go on to discuss whether Walmart had actual or constructive notice of the spilled liquid. (Section III.B.) Because Teixeira presents no evidence that Walmart had actual or constructive notice of the spill, or that its inspection policies are unreasonable, there are no questions of material issues of fact and summary judgment is granted.

### A. Mode-of-Operation Rule

The mode-of-operation rule applies where a business has adopted a practice that in effect transfers risk from the business to the consumer by allowing customers, rather than employees, to gather goods from shelves in a self-service model.[2] *Prioleau*, 122 A.3d at 337–38. In effect, the mode-of-operation rule displaces the usual rule in negligence cases and shifts the burden of proof on actual or constructive notice to the defendant.

When a business allows customers to serve themselves, there is an increased "risk that a dangerous condition will go undetected and that patrons will be injured." *Id.* at 338. Given the increased risk, there arises an "inference of negligence" sufficient to alleviate plaintiff's burden to prove that the business had actual or constructive notice of a dangerous condition. *Id.* at 337 (citation omitted). Instead, the defendant must "show that it did all that a reasonably prudent [person] would do in the light of the risk of injury the operation entailed." *Id.* (cleaned up).

The mode-of-operation rule, however, applies only in "limited circumstances." *Id.* at 330. It is appropriate when "as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the

---

[2] Teixeira has not specifically invoked the mode-of-operation rule, but it is mentioned in Walmart's reply brief, so I analyze it. (DE 21 at 3.) In a prior opinion, I traced the history of the rule to the self-service revolution in American retailing, pioneered by, among others, the Piggly Wiggly supermarket chain. *See Garcia v. Walmart, Inc.*, 2021 WL 754006 (D.N.J. Feb. 26, 2021).

4

business, the property's condition, or a demonstrable pattern of conduct or incidents." *Id.* at 337 (citation omitted). Most importantly, there must be "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id.* at 338.

The New Jersey Supreme Court has applied the rule to injuries occurring when a plaintiff slipped on (1) a grape near an area of a supermarket that displayed produce in open-top bags, *Nisivoccia*, 818 A.2d at 317, (2) a green bean in a produce aisle with open bins, *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 514 (N.J. 1966), and (3) a sticky substance in a cafeteria, *Bozza v. Vornado, Inc.*, 200 A.2d 777, 787 (N.J. 1964). Those areas and objects all "invite[]" actions by customers, and those actions carry a greater risk of spilling or dropping slippery material than would be present in ordinary business operations. *Nisivoccia*, 818 A.2d at 317. A useful comparison is provided by the court's rejection of the rule's application to a customer's slip-and-fall on water tracked in from outside of a fast-food restaurant. *Prioleau*, 122 A.3d at 339. The tracked-in water, the court held, was not a special feature of a self-service operation but a risk that "exists in virtually any facility that admits patrons from public sidewalks or parking areas." *Id.*

This case does not involve the dangers of self-service in the relevant sense. It is true, of course, that Walmart customers serve themselves; they routinely select sealed containers from the shelves and place them in their shopping carts. But they are not invited or expected to open the containers or dispense the contents until they get home. (Customers do not, for example, fill their own bottles from a spigot on a larger container, or fill their own bags from bins containing loose merchandise.) Teixeira allegedly slipped on liquid that, at least inferably, came from one of the sealed containers sold by the store. Nothing about the presence of liquid on the floor is a regular or inevitable feature of customers' self-selection of sealed containers. To invoke the mode-of-operation doctrine, the plaintiff would need to demonstrate that something

5

about Walmart's operations created a particular risk that liquids would spill from the containers and end up on the floor of the aisle.

*Layden v. Target Corp.* is instructive. There, a plaintiff walking in the aisle of a Target store slipped on a small plastic hook typically used to hang clothing on racks. 768 F. App'x 152, 154–55 (3d Cir. 2019). The Third Circuit explained that these hooks did not implicate self-service because, although customers encounter the hooks when they handle clothes, and they *could* rip off the hooks, the plaintiff "identifie[d] no aspect of [the hooks'] characteristics or packaging that *invited* removal so that a substantial risk of injury is inherent in Target's use of them." *Id.* at 158 (emphasis added) (quotation marks and citations omitted).

A substantial body of case law is in accord with *Layden*.[3] The cases regularly reject the application of the mode-of-operation rule where it is based on nothing more than a store's placing of merchandise in closed containers on shelves that are accessible to shoppers. Something more, such as a particular risk of spilling as a result of self-service, must be present.

The same principles are at work here. Common sense and the evidence suggest that the ordinary operation of Walmart's system entails a customer's picking out a container and placing it in a cart, without ever exposing the liquid contents. Of course, it is not impossible that a Walmart customer could

---

[3]  *See Quejada v. ShopRite*, 2021 WL 162683, at *2 (N.J. Super. Ct. App. Div. Jan. 19, 2021) (per curiam) (slip on liquid did not have nexus to self-service when "[t]here was no evidence that defendant dispensed liquid products in open containers"); *Colon v. Toys "R" Us-Del., Inc.*, 2017 WL 1166445, at *3 (N.J. Super. Ct. App. Div. Mar. 29, 2017) (per curiam) (slip on bubble blowing liquid had no nexus to self-service when the store did nothing to invite use of the product in-store); *White v. 525 Meat Corp.*, 2014 WL 11099412, at *4 (N.J. Super. Ct. App. Div. Feb. 22, 2016) (per curiam) (slip on leaked liquid from detergent bottle no nexus to self-service when there was no evidence that customers handled bottles in such a way to be prone to spillage); *Anderson v. Stop & Shop Supermarket Co.*, 2016 WL 6518597, at *3 (N.J. Super. Ct. App. Div. Nov. 3, 2016) (per curiam) (mode-of-operation rule not applicable to slip in frozen food aisle because "items in the frozen food aisle are not likely to spill out of a sealed container"); *Lee v. Shoprite*, 2012 WL 1605205, at *3 (N.J. Super. Ct. App. Div. May 9, 2012) (per curiam) (same).

open a container of brake fluid; nor is it impossible that a container could drop and crack. But there is no evidence that Walmart's display of merchandise on shelves invites customers to open the bottles or creates a particular risk of a container's being cracked. The ordinary business-invitee rules of negligence, not the mode-of-operation rule, govern this situation.

The New Jersey Supreme Court has warned against expanding the mode-of-operation rule. *Prioleau*, 122 A.3d at 338–39. To apply the rule based on nothing more than a shopper's selection of products from a shelf would expand the rule's operation to most modern retail operations. *Lee v. Shoprite*, 2012 WL 1605205, at *3 (N.J. Super. Ct. App. Div. May 9, 2012). Such a broad application turns an exception into a rule and swallows the routine application of the business invitee standard of negligence, which is fairly stringent to begin with. Based on common sense and precedent, I decline to apply the mode-of-operation rule here.

### B. Constructive Notice

Because the mode-of-operation rule does not apply, Teixeira must show that Walmart had actual or constructive notice of the spilled liquid. *Prioleau*, 122 A.3d at 335. She does not claim that Walmart had actual notice of the spill or that a Walmart employee caused the spill. Rather, she argues that Walmart had constructive notice because with proper inspection, it would likely have noticed the spill before she slipped. (Opp. at 4–5.) There is, however, no evidence in the record demonstrating or estimating when the spill occurred, or of any circumstances that should have triggered Walmart's heightened vigilance of the automotive aisle.

Generally, a "defendant has constructive notice when the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016) (quotation marks and citation omitted). Time is not the only relevant factor, however. A plaintiff can prevail without such evidence, if she

can point to other factors that should have made the defendant aware of the condition. *See, e.g., Bezglasnaya v. Trump Ent. Resorts, Inc.*, 2013 WL 796308, at *4 (D.N.J. Mar. 4, 2013) (denying summary judgment and finding that plaintiff had presented a fact question of whether defendant had constructive notice of dangerous conditions when employees were working nearby and hostess walked by location where the fall occurred). Constructive notice is usually a question of fact for the jury, *e.g., Betancourt v. Home Depot U.S.A., Inc.*, 2018 WL 3954854, at *5 (D.N.J. Aug. 16, 2018), but may be appropriate for summary judgment when no reasonable juror could conclude otherwise, *e.g., Troupe*, 129 A.3d at 1114. "[I]f a plaintiff presents material facts that suggest defendant should have been aware of the dangerous condition, summary judgment should be denied because whether a defendant in fact had constructive notice is a question for the jury." *Bezglasnaya*, 2013 WL 796308, at *4 (citing *Monaco v. Hartz Mountain Corp.*, 178 N.J. 401, 419 (2004)).

Here, however, Teixeira presents no such facts.

Time, as noted, is an important consideration, and there is much debate about how long a spill must be present to trigger constructive notice. *See Garcia v. Walmart, Inc.*, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021). Here, however, there is literally no probative evidence as to how long the liquid had been on the floor before Teixeira slipped on it.[4]

Nevertheless, constructive knowledge may be proved indirectly. A plaintiff like Teixeira, who lacks direct evidence of when the spill occurred, may

---

[4] If there is no direct evidence of when the spill occurred, the length of time can nevertheless be estimated indirectly through eyewitness testimony. Here, there is no such indirect evidence supporting plaintiff's version of the events. *See Grzanka v. Pfeifer*, 301 N.J. Super. 563, 574 (App. Div. 1997) (finding constructive notice where eyewitness noted the light had been out for a while); *Tua v. Modern Homes, Inc.*, 64 N.J. Super. 211, 220 (App. Div. 1960) (finding constructive notice where wax on the floor had hardened around the edges). Indeed, the only such indirect evidence, not very probative but in defendant's favor, is that the spill showed no signs of footprints or the marks of shopping cart wheels.

nevertheless prevail on summary judgment. Two cases illustrate the indirect approach.

In the first, my own decision in *Garcia v. Walmart*, the plaintiff established through video evidence that the spill had been present in the shampoo aisle for at least twenty minutes before she slipped on it. *Id.* at *1. Although twenty minutes is not necessarily a sufficient time to establish constructive notice, I denied defendant's summary judgment motion for three reasons. First, based on the evidence in that case, I found that a reasonable juror could find it unreasonable that no employee walked down the aisle in a 20-minute span. *Id.* at *5 (citing *Mack-Epps v. Supervalu, Inc.*, 2011 WL 4985816, at *3 (D. Md. Oct. 18, 2011)). Second, I found that a juror could find that the shampoo aisle was a high traffic area that required more frequent inspections than Walmart performed. *Id.* (citing *McCracken v. Target Corp.*, 2011 WL 1466075, *4 (D.N.J. April 18, 2011)). And third, I found that a juror could find that the products in the haircare aisle, because of their nature or packaging, are particularly prone to spills of slippery liquid, warranting frequent inspections. *Id.*

The second exemplar, *Yazujian v. PetSmart,* denied summary judgment to the defendant, despite plaintiff's inability to establish the length of time that a spill was present. 2016 WL 4408817 (D.N.J. Aug. 16, 2016). There, plaintiff slipped on a puddle of water in the dry cat food aisle of a PetSmart store on a snowy day. *Yazujian* at *1. The court reasoned that the plaintiff had presented evidence that raised factual questions about the source of the water and whether PetSmart should have been "especially vigilant" because of the snowy weather. *Id.* at *9–11. Other courts have reached similar conclusions in cases where the length of time a dangerous condition was present was very short or undetermined, but other factors were present that should have put defendants on notice.[5]

---

[5]   *See Parmenter v. Jarvis Drug Store, Inc.*, 48 N.J. Super. 507, 511 (App. Div. 1957) (overturning a grant of summary judgment because a jury could find that the

Here, Teixeira presents no evidence of how long the spill had been on the floor and puts forward no additional facts that could lead to an inference that Walmart nevertheless had constructive notice. Unlike in *Yazujian*, there was no inclement weather; Teixeira testified in her deposition that the night was clear. (Teixeira Dep. at 48.) Unlike in *Romeo*, there is no evidence that an employee was present in the area immediately before Teixeira's fall and should have seen the spill. Unlike in *McCracken* and *Garcia*, there is no indication that the automotive aisle is a highly trafficked or particularly dangerous part of the store. In short, Teixeira presents no particular reason that Walmart should have paid extra attention to the location of the spill on the day in question.

Instead, Teixeira criticizes Walmart's inspection protocols, arguing that it has an "affirmative duty to inspect the premises to render them safe for the protection of Plaintiff." (Opp. at 4.) Essentially, Teixeira argues that Walmart breached its duty to her by failing to continuously inspect every aisle of the store. (Opp. at 4–6.) The law of negligence, however, imposes on businesses only "the duty of *reasonable* care to provide a *reasonably safe place* to do that which was within the scope of the invitation." *O'Shea v. K Mart Corp.*, 304 N.J. Super. 489, 492 (App. Div. 1997) (citing *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 433 (1993)) (emphasis added). Businesses are not required to undertake "extraordinary" inspections. See *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 292–93 (1984).

---

defendant had constructive notice of water by its door because it had been raining all morning and the water was dirty); *Romeo v. Harrah's Atlantic City Propco, LLC*, 2016 WL 916685, at *5 (D.N.J. March 10, 2016) (denying summary judgment because a jury could find that defendant had constructive notice even though the spill had occurred only four minutes before the fall, because an employee was seen on video in the location of the spill after it had occurred); *McCracken v. Target Corp.*, 2011 WL 1466075, *4 (D.N.J. April 18, 2011) (denying defendant's motion for summary judgment, even though plaintiff had not proven how long before her accident a dangerous condition had existed, in part because a jury could find that defendant had constructive notice on a "minute-by-minute basis" in a high-traffic area of a store where spills were "particularly likely").

The inspection protocol described by John Valencia in his deposition, appears reasonable.[6] Valencia describes three formal inspections per day, supplemented by Walmart employees continuously walking around the store, looking for hazards, as well as a protocol to protect customers while a hazard is being cleaned up. (Valencia Dep. at 23-25, 28–31, 48.) There is no evidence that the automotive aisle where Teixeira slipped is a particularly dangerous location that should be subject to heightened vigilance. In addition, without knowing how long the spill was present on the floor—unlike in *Garcia* where a duration was established—it is impossible for a juror to evaluate the reasonableness of Walmart's inspection procedures without engaging in guesswork or conjecture. In short there is no evidence that Walmart had constructive notice of the spill, or that it did not exercise reasonable care in inspecting the store for dangers.

Courts "have long held that it is ordinarily a plaintiff's burden to prove negligence, and that it is never presumed." *Khan v. Singh*, 200 N.J. 82, 91 (2009). "An inference [of negligence] can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Long v. Landy*, 35 N.J. 44, 54 (N.J. 1961) Although Teixeira claims Walmart had notice of the spill, "unsupported allegations ... are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). In premises liability cases in particular, the absence of evidence of "actual or constructive notice ... is fatal to plaintiff's claims." *Jeter v. Sam's Club*, 2021 WL 1961122, at *5 (N.J. Super. Ct. App. Div. May 17, 2021) (quoting *Arroyo v. Durling Realty, LLC*, 433 N.J. Super. 238, 243 (App.

---

[6]   Valencia, who was deposed by plaintiff's counsel, was not yet working at the Union Walmart location at the time of Teixeira's accident. In his position as loss prevention manager, however, he would naturally have had knowledge of store safety protocols. Plaintiff did not argue that Valencia's testimony was inadmissible or dispute that the protocols Valencia described were in place at the Union store at the time that Teixeira fell. Indeed, plaintiff's counsel accepted Valencia's description, arguing that the protocols as he described them were inadequate, and cited them in support of the plaintiff's argument that the store was negligent.

Div. 2013)). Thus, because Teixeira has failed "to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial," and presents only conjecture and unsupported allegations, there can be "no genuine issue of material fact" because without evidence that Walmart breached its duty of care, "all other facts are immaterial." *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23). Because there are no genuine issues of material fact and Teixeira cannot meet her burden to prove Walmart breached its duty, I must grant Walmart's motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, Walmart's motion for summary judgment (DE 19) is granted. A separate order will issue.

Dated: September 16, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**